Linda **SODERLUN**, Charles A. Rodgers, Paul Blecha, Howard Brooks, Theron Carlson, James Cole, William Durica, Richard Fugier, Robert Hayes, Francis Mathie, Roger Maxwell, William Toomey, Theresa Wise, Calvin Hulsey, Gary D. Reeves, Beverly DeMoss, and Richard Smith, Plaintiffs–Appellants,

and

Joseph Carbone and Jeanette Richey, Plaintiffs–Appellants and Cross–Appellees,

v.

**PUBLIC SERVICE COMPANY OF COLORADO,** Defendant–Appellee and Cross–Appellant.

No. 95CA0458.

Colorado Court of Appeals, Div. II.

Feb. 6, 1997.

Rehearing Denied March 6, 1997.

Certiorari Denied Oct. 20, 1997.

Feiger, Collison & King, P.C., Lynn D. Feiger, Diane S. King, Joan M. Bechtold, Denver, for Plaintiffs–Appellants and Cross–Appellees.

Sherman & Howard, L.L.C., James E. Hautzinger, Wendi J. Delmendo, Denver, for Defendant–Appellee and Cross–Appellant.

Opinion by Judge CRISWELL.

Plaintiffs, who are 19 former employees of defendant, Public Service Company (PSC), commenced this action complaining of the termination of their employment with PSC. Each plaintiff asserted that such termination violated the terms of a contract each had with PSC, as well as an express covenant of good faith and fair dealing, and that their reliance upon statements made to them by PSC supervisors gave rise to a promissory estoppel claim. The trial court dismissed the claims of all but two plaintiffs—Joseph Carbone and Jeanette Richey—and it submitted only their claims for breach of contract to a jury which returned verdicts in favor of both. Plaintiffs appeal from the judgments dismissing the other claims asserted, and PSC cross-appeals from the judgments entered on the jury verdicts. We affirm the judgments of dismissal and reverse the judgments entered on the two breach of contract claims.

Prior to plaintiffs' terminations in 1991, PSC had a long history of not laying off employees for economic reasons, and of terminating employees only for inadequate performance. Even during difficult economic times, PSC historically had reduced employee hours or instituted voluntary lay-off programs, rather than involuntarily laying off employees.

However, in mid–1991, PSC established a task force to recommend ways to improve the company's efficiency and profitability. Thereafter, in July 1991, the president of PSC sent a letter to every employee, explaining some of the economic challenges PSC was facing and warning employees that, in order to reduce costs, there was a "very real possibility of a reduction in work force."

Because of the task force's later conclusion that many managers at PSC were supervising relatively few employees, PSC undertook an organizational analysis beginning in the fall of 1991. As a result of that analysis, 100 employees, who were performing functions deemed to be "nonessential," including all but two of the plaintiffs, were laid off. The other two plaintiffs were laid off when two divisions were later consolidated. PSC makes no claim that the services of any plaintiff were unsatisfactory, and plaintiffs do not assert that their lay-offs were discriminatory or otherwise not undertaken out of legitimate economic considerations.

Each plaintiff received at least two weeks' pay upon termination and was allowed to seek other jobs with PSC. In addition, each plaintiff received a severance payment ranging from $10,000 to $37,000.

Each of plaintiffs' claims for wrongful termination was based on three types of evidence: (1) PSC's long-term practice of not laying off employees; (2) PSC's Corporate Code of Business Conduct; and (3) oral statements made by various supervisors from time to time to each plaintiff.

PSC's Corporate Code of Business Conduct, a document every employee was required to read, stated that PSC was committed to "high ethical and moral standards in all we do" and to acting in "honesty, decency, fairness, openness, and trustworthiness." This document also stated that, to uphold confidence in PSC's reputation for integrity, "it is essential that employees, at all times,

demonstrate the highest ethical conduct when conducting business with fellow employees...."

In addition, each of the plaintiffs testified that the various oral statements made by PSC supervisors related to their job security. The nature of these remarks varied somewhat, but they consisted, primarily, of references to PSC's history of not engaging in layoffs and of assurances that plaintiffs could continue to work for PSC so long as they were adequately performing their jobs.

In dismissing all of plaintiffs' promissory estoppel and breach of good faith covenant claims, the trial court concluded that the oral and written statements upon which plaintiffs relied as the foundation for these claims were either too indefinite and unspecific to support the claims asserted or that plaintiffs could not reasonably have relied upon those statements as guaranteeing lifetime employment without the possibility of a layoff for economic reasons.

Further, the trial court concluded that, to recover on their breach of contract claims, plaintiffs were obligated to prove that they had provided "special consideration" to PSC to establish these claims. It also concluded that none of the plaintiffs, save Carbone and Richey, had furnished any such special consideration. With respect to these two plaintiffs, the court concluded that their testimony that they each had left higher-paying jobs to work for PSC was sufficient to allow the jury to determine that they had provided special consideration. It was on this basis that the contract claims of these two defendants were submitted for jury determination.

Our review of this record, however, convinces us that the single, significant issue, the resolution of which will be determinative of both plaintiffs' appeal and PSC's cross-appeal, is whether the statements relied upon by plaintiffs as the basis for all of their claims are, as a matter of law, of such a nature as to constitute a legally binding promise upon which plaintiffs could reasonably rely. We conclude that none of the pertinent statements evidence a promissory intent and that none of them was sufficiently definite and specific as to be judicially enforceable.

■ Absent an explicit understanding to the contrary, every employment relationship is presumed to be "at-will," meaning that either the employer or the employee may terminate the relationship at any time, without notice and without cause. *Martin Marietta Corp. v. Lorenz*, 823 P.2d 100 (Colo. 1992).

In *Continental Air Lines, Inc. v. Keenan*, 731 P.2d 708 (Colo.1987), however, our supreme court determined that, under certain circumstances, the existence of such an at-will relationship may be rebutted, and the employee may demonstrate that the termination of the employment relationship is subject to certain restrictions. Such demonstration must consist of proof that the employer made statements to the employee (there, written statements in an employee handbook that the employer had distributed), and that those statements, the circumstances under which they were made, and the employee's reaction thereto, met the requirements of Restatement (Second) of Contracts § 24 (1981) for an offer by the employer and the acceptance of that offer by the employee. Alternatively, even if the requirements for the formation of a contract under Restatement § 24 cannot be shown, the employee may demonstrate that conditions have been imposed upon the at-will relationship, based upon statements made by the employer, by proving the prerequisites for application of doctrine of promissory estoppel under Restatement (Second) of Contracts § 2 and § 90 (1981). *See also Churchey v. Adolph Coors Co.*, 759 P.2d 1336 (Colo.1988).

Aside from the specific principles adopted by the supreme court in this prior jurisprudence, its significance lies in that court's consideration of the employment relationship pursuant to concepts developed by traditional approaches to the common law of contracts. The supreme court has not purported to create any special rules to deal with employee claims of contract breaches. Hence, our analysis of the issues presented here must comport with those traditional contract precepts.

We start that analysis by noting that the contracts that plaintiffs assert were agreed

to by PSC are extraordinary. They do not claim only that PSC agreed to limit its authority to terminate their employment to circumstances constituting just cause. Were plaintiffs' claims based upon an alleged just cause agreement, they would be faced with the fact that the courts are in general agreement that a good faith management decision to lay off employees for economic reasons, if that layoff is not pretextual, discriminatory, or in violation of some applicable procedural requirement, constitutes just cause for an employee's termination, even under a contract requiring such cause. *See Taylor v. National Life Insurance Co.*, 161 Vt. 457, 652 A.2d 466 (1993); *Stull v. Combustion Engineering, Inc.*, 72 Ohio App.3d 553, 595 N.E.2d 504 (1991); *Ewers v. Stroh Brewery Co.*, 178 Mich.App. 371, 443 N.W.2d 504 (1989).

However, plaintiffs assert that, in addition to agreeing not to discharge them for other than just cause, PSC also agreed never to engage in an involuntary layoff. They argue, in essence, that PSC agreed never to reduce its labor costs by reducing the size of its workforce, even if it were facing substantial monetary losses.

There is, of course, no legal barrier to an employer agreeing to restrict its right to terminate employees in such a manner. However, because of the extraordinary limitation that would be created by such an agreement, some courts have insisted that any enforceable promise of this type be "clear and specific." *Taylor v. National Life Insurance Co., supra*, 161 Vt. at 468, 652 A.2d at 473.

Moreover, quite irrespective of the nature of the promise, the common law generally requires that, to form the basis for an enforceable contract, a promise must be "reasonably certain"; that is, the promise must be sufficiently specific to "provide a basis for determining the existence of a breach and for giving an appropriate remedy." Restatement (Second) of Contracts § 33(1) & (2) (1981).

Further, the concept of promissory estoppel was developed by equity to enforce, in appropriate circumstances, a unilateral promise for which no consideration was provided.

*See Vancheri v. GNLV Corp.*, 105 Nev. 417, 777 P.2d 366 (1989) (under theory of promissory estoppel reliance by promisee is substitute for consideration). Circumstances that warrant the application of the promissory estoppel doctrine result in the creation of a *contract*. Restatement (Second) of Contracts, *supra*, § 90 comment d.

■ Hence, whether an alleged promise is claimed to be a part of an express contract or is asserted as the basis for the application of promissory estoppel, it must, in either event, be sufficiently specific so that the judiciary can understand the obligation assumed and enforce the promise according to its terms.

This general precept has been applied by the Colorado courts in various settings. *See Stice v. Peterson*, 144 Colo. 219, 355 P.2d 948 (1960) (if language is too uncertain to allow court to determine intent, it cannot be enforced); *Mestas v. Martini*, 113 Colo. 108, 155 P.2d 161 (1944) (to be enforced, contract needs to be not only complete as to all essential terms but also of such certainty and definiteness as to be capable of enforcement); *Greater Service Homebuilders' Investment Ass'n v. Albright*, 88 Colo. 146, 293 P. 345 (1930) (if agreement is vague and indefinite as to any essential term, it does not constitute a contract).

In addition, several courts have considered this issue within the context of statements made by an employer to a prospective or present employee. In doing so, the courts have concluded that, to constitute an enforceable promise, such a statement must meet two requirements.

■ First, the statement must either disclose a *promissory* intent or be one that the employee could reasonably conclude constituted a *commitment* by the employer. If the statement is merely a description of the employer's present policies or a forecast of the employee's likely career progression, it is neither a promise nor a statement that could reasonably be relied upon as a commitment. *See Snyder v. Ag Trucking, Inc.*, 57 F.3d 484, 489 (6th Cir.1995) (statement that employer was a "fair company" and that employee would have job until he retired if he performed well are not promises; they are

"general comments about career growth and company policy"); *Ruud v. Great Plains Supply, Inc.,* 526 N.W.2d 369 (Minn.1995) (statement that "good employees are taken care of" mere statement of policy, not a promise); *Vancheri v. GNLV Corp., supra,* 105 Nev. at 422, 777 P.2d at 369 ("General expressions of long-term employment or job advancement do not convert an at-will employment contract to a termination only for cause contract").

This conclusion is entirely consistent with *Continental Air Lines, Inc. v. Keenan, supra,* 731 P.2d at 711–712, in which our supreme court determined that, to provide the basis for an actionable claim, a statement in an employee handbook must either manifest the employer's "willingness to enter into a bargain," or be one "that the employer should reasonably have expected the employee to consider ... as a commitment from the employer...." And, for this purpose at least, there is no analytical difference between a written statement in a handbook distributed to employees and an oral statement made by one in authority directly to an individual.

■ Second, even if the statement meets the foregoing requirement, it still must be sufficiently definite to allow a court to understand the nature of the obligation undertaken.

In applying this latter test, the courts have considered a variety of statements to be sufficiently definite and specific to be judicially enforceable. *See Stull v. Combustion Engineering, Inc., supra,* (employee manual provided that, in case of lay-offs, consideration would be given to long-time employees, and employee with 34–year work history was told he would be around until plant closed); *Foley v. Interactive Data Corp.,* 47 Cal.3d 654, 254 Cal.Rptr. 211, 765 P.2d 373 (1988) (statement to employee that, if he did good job, his future was secure, combined with employer practice of not terminating without good cause, gave rise to *good cause* contract).

Likewise, divisions of this court, without referring to the specificity test, have enforced definite oral promises made to employees. *See Chidester v. Eastern Gas & Fuel Associates,* 859 P.2d 222 (Colo.App.

1993) (promise, made to induce employees to transfer to division, that they would have five years and a minimum specific budget to recuperate division enforceable); *Tuttle v. ANR Freight System, Inc.,* 797 P.2d 825 (Colo.App. 1990) (employee handbook's statement of no gender discrimination and specific method of determining wage rate support female employee's wage claim).

In contrast, less specific statements have been declared to be unenforceable. *See Vasey v. Martin Marietta Corp.,* 29 F.3d 1460, 1465 (10th Cir.1994) (assurances of fair treatment mere "vague assurances" and unenforceable under Colorado law); *Hayes v. Eateries, Inc.,* 905 P.2d 778 (Okla.1995) (assurance that employee would have job so long as performance adequate too vague); *Redgate v. Fairfield University,* 862 F.Supp. 724 (D.Conn.1994) (statement that employee could have job as long as he wanted unenforceable); *Snoey v. Advanced Forming Technology, Inc.,* 844 F.Supp. 1394 (D.Colo. 1994) (under Colorado law, statement that employee hired for long-term goals not enforceable). *See also Allen v. Dayco Products, Inc.,* 758 F.Supp. 630 (D.Colo.1990) (applying Colorado law).

■ If the evidence is conflicting or will admit of more than one inference and one view of the evidence would support the existence of a contract, the issue is one for the jury. *I.M.A., Inc. v. Rocky Mountain Airways, Inc.,* 713 P.2d 882 (Colo.1986). If, on the other hand, the evidence discloses only a "vague assurance," rather than a legally enforceable promise, then the court must determine the issue as a matter of law. *Vasey v. Martin Marietta Corp., supra.*

■ Here, whatever relevance they may have upon the claims for breach of the covenant of good faith, the various written statements contained in PSC's Corporate Code of Business Conduct, enjoining all employees to observe high ethical and moral standards when dealing with other employees, were so indefinitely generic as to be unenforceable under any contract or promissory estoppel theory.

■ Further, while it is undisputed that, with several rather insignificant exceptions, PSC had not engaged in an involuntary employee lay-off prior to the events giving rise to this controversy, plaintiffs introduced no evidence that PSC had formally adopted such a "no lay-off" policy. And, there is no evidence that PSC had adopted any uniform procedure (such as the distribution of some written announcement) to inform its employees of any such claimed policy.

In addition, because any such policy would have been unilaterally adopted, it could have been amended by PSC without liability, provided notice of such amendment was provided to the employees. *See Ferrera v. Nielsen*, 799 P.2d 458 (Colo.App.1990). And, it is undisputed that, several months before plaintiffs were laid off, they were provided written notice of the establishment of the task force and of the real possibility of a force reduction.

These considerations lead to the conclusion that plaintiffs' contract and promissory estoppel claims must be grounded upon the statements made by various supervisors, rather than upon PSC's pronouncement of some general policy. If these statements meet the requirements necessary to constitute a specific promise, plaintiffs may well be entitled to recover. If they do not, there is no other basis in the evidence for those claims.

The statements made to each of the plaintiffs vary somewhat, and they were made under varying circumstances. The issue we must address in each case, however, is whether the statement disclosed an intent to enter into a bargain, or was of a nature that the employee could conclude that a commitment was being made, on the one hand, or whether it was merely a vague assurance of job security, described PSC's past practice, or forecast the individual's job progression, on the other.

We consider the statements to the two successful plaintiffs first.

■ Plaintiff Carbone testified that, when interviewed for a position with PSC, he was told that, so long as he did his job, he would have a job with PSC. Later, one supervisor told him that there was no reason that he could not plan on retiring from PSC, and another said that he could work at PSC as long as he wanted to.

Not only does none of these statements refer to any specific promise or commitment that Carbone would never be laid off for economic reasons, but general assurances of a secure job, such as were made to this plaintiff, do not even result in a contract requiring just cause for termination. *Vasey v. Martin Marietta Corp., supra; Hayes v. Eateries, Inc., supra; Allen v. Dayco Products, Inc., supra.*

■ The statements made to plaintiff Richey were of a similar character. She testified that, during her job interview, she was told that PSC "had never had any layoffs." Later, during an informal coffee-room conversation, PSC's director of human resources said, "The only way you leave [PSC] is either to retire or be carried out on a stretcher."

The statement referring to lay-offs was a recitation of a historical fact, not a promise that no lay-off would ever occur in the future. And, the later statements were, again, insufficient to create a restriction upon PSC's right to terminate. *Vasey v. Martin Marietta Corp., supra.*

We have also examined each of the other plaintiff's description of the statements made; while each varied somewhat in context, they were of the same general character. Representative statements were "if you get hired here, you will probably be here for a long time"; PSC "always takes care of its employees"; "as long as you want to work, you will have a job"; "unlike Martin Marietta, [PSC] did not have layoffs"; PSC "is an extremely stable company to work for"; employee attrition is low because PSC offers lower wages and keeps employees until they retire or until they want to leave; and PSC "hadn't had a layoff in the past and it didn't look like it was going to in the future because of the work."

As we have noted, plaintiffs do not claim that their alleged contracts allowed PSC to terminate them only for just cause. They claim, rather, that they had been specifically

assured that they would never be subjected to an involuntary lay-off. We conclude, however, that the supervisors' statements upon which they relied to establish their claims were neither promissory in nature nor sufficiently definite to be capable of judicial enforcement. They were either descriptions of past history, forecasts of the employee's future progression, or vague assurances of employment stability. As a matter of law, they were insufficient upon which to base either an express contract or promissory estoppel claim.

Nor did the evidence establish a proper basis for a claim based upon the breach of an express covenant of good faith.

We will assume that an employment-at-will contract contains no implied covenant of good faith, *see Farmer v. Central Bancorporation, Inc.*, 761 P.2d 220 (Colo.App.1988), but that use by an employer of general language similar to that contained in PSC's Corporate Code of Business Conduct gives rise to an express obligation upon the subject, *see Decker v. Browning–Ferris Industries*, 931 P.2d 436 (Colo.1997). Nevertheless, in either case, the obligation is only to assure that the parties will exercise good faith in performing the obligations and exercising the rights created by the other provisions of the agreement.

 The covenant of good faith and fair dealing, whether express or implied, does not inject new substantive terms into a contract or change its existing terms. *Amoco Oil Co. v. Ervin*, 908 P.2d 493 (Colo.1995); *Wells Fargo Realty Advisors Funding, Inc. v. Uioli, Inc.*, 872 P.2d 1359 (Colo.App.1994). Such a covenant, therefore, cannot limit an employer's right to discharge without cause, unless there is an express or implied promise, independent of the covenant of good faith itself, restricting that right.

Here, because we have concluded, as a matter of law, that no limiting promise was made, no claim based upon the breach of the alleged express covenant was established.

Finally, because we have concluded that the various statements were insufficient to create any contractual obligation on PSC's part, we need not address any issue with respect to the doctrine of "special consideration." *See Schur v. Storage Technology Corp.*, 878 P.2d 51 (Colo.App.1994); *Pittman v. Larson Distributing Co.*, 724 P.2d 1379 (Colo.App.1986).

The judgment in favor of plaintiffs Carbone and Richey is reversed. In all other respects, the judgment of the district court is affirmed.

ERICKSON* and PIERCE*, JJ., concur.