**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 21 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ZORA L. TOTH, Ph.D.,

    Plaintiff-Appellant,

v.

GATES RUBBER COMPANY,

    Defendant-Appellee.

No. 99-1017
(District of Colorado)
(D.C. No. 97-WY-2662-AJ)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY** and **MURPHY,** Circuit Judges, and **COOK**, District Judge.[**]

    Plaintiff-Appellant, Zora Toth ("Toth"), appeals the district court's grant of summary judgment in favor of Defendant-Appellee, Gates Rubber Company ("Gates"). Toth sued Gates, her former employer, alleging unlawful discrimination on the basis of gender and national origin. These allegations

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**]Honorable H. Dale Cook, Senior District Judge, United States District Court for the Northern District of Oklahoma, sitting by designation.

included failure-to-promote, discriminatory discharge, and wage discrimination claims. Toth also alleged retaliation, breach of contract, promissory estoppel, and violations of the Equal Pay Act.

Gates moved for summary judgment on all of Toth's claims. The district court ruled that Toth could not maintain a cause of action for breach of contract or promissory estoppel because she had failed to demonstrate the existence of a specific promise. Additionally, the district court held that Toth had failed to establish a prima facie case on any of her discriminatory discharge, failure-to-promote, and retaliation claims and had also failed to show pretext. The court also concluded that Toth had failed to offer any evidence in support of either her Equal Pay Act or her Title VII wage discrimination claims. The district court, therefore, granted Gates' motion for summary judgment and dismissed all of Toth's claims. Toth brought this appeal.

Exercising jurisdiction pursuant to 28 U.S.C. § 1291, this court **affirms** the grant of summary judgment in part, **reverses** in part, and **remands** for further proceedings consistent with this opinion.

I. **FACTUAL BACKGROUND**

Toth was born in Yugoslavia and emigrated to the United States in 1967. Toth obtained her Bachelor's and Master's degrees in chemistry from the University of Belgrade, Yugoslavia. In 1987, Toth obtained her Ph.D. in

chemical engineering from Century University. In 1973, Toth sought and obtained employment with Gates. She initially held the position of Research Librarian and during her twenty-three-year tenure with Gates also held the positions of Chemist Research Librarian, Research Chemist I, and Senior Research Chemist.

In October 1995 Toth was transferred to Gates' Materials Analysis Laboratory. On or about January 1, 1996, Doug Schneider ("Schneider") became Toth's supervisor. Beginning on or about August 15, 1996, Toth began receiving performance evaluations noting deficiencies in her performance and identifying several areas in which she needed to improve her performance. These evaluations were prepared by Schneider. In the evaluations Toth was criticized, in part, for: (1) poor interpersonal skills, (2) poor written communication skills, and (3) an inability to complete work in a timely manner.

In 1997, Toth sought to transfer from the Materials Analysis Laboratory to Gates' Air Springs Department where there was an opening for a Materials Development Engineer. Toth claims she had held the position previously and had performed successfully in the position. Toth was not hired for this position which was instead awarded to Rich Larmi, a male with a background in chemical engineering.

Toth remained in the Materials Analysis Laboratory and was ultimately placed on probation for 90 days and instructed to improve her performance or risk termination. In a performance evaluation dated March 26, 1997, Toth was informed that because she had failed to improve her performance in the areas in which she had been rated as "below standard," her employment with Gates was terminated effective March 28, 1997.

Toth disagreed with the negative performance evaluations and contends that she believed them to be the product of ongoing unlawful discrimination and harassment. Toth communicated her concerns to Gates' management and to individuals in Gates' Human Resources and Legal Departments but alleges no action was taken to correct the perceived discrimination. Toth filed her first charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on August 13, 1996 alleging retaliation; violations of the Equal Pay Act; and unlawful discrimination based on sex, age, and national origin. Toth filed supplemental charges with the EEOC on December 2, 1996; January 23, 1997; March 26, 1997; and April 18, 1997. Toth alleges that her complaints to Gates and the EEOC led to continued harassment and retaliatory acts, including additional negative job evaluations, the imposition of the probationary period, and, eventually, her termination.

Toth filed a complaint in federal district court on December 19, 1997. In her complaint, Toth raised six claims for relief: (1) breach of contract; (2) promissory estoppel; (3) retaliation; (4) unlawful discrimination on the basis of sex including discriminatory discharge, discriminatory failure-to-promote, and wage discrimination claims; (5) unlawful discrimination on the basis of national origin including discriminatory discharge, discriminatory failure-to-promote, and wage discrimination claims; and (6) violations of the Equal Pay Act.[1] Gates moved for summary judgment. The district court granted Gates' motion and dismissed all of Toth's claims. *See Toth v. Gates Rubber Co.*, 31 F. Supp.2d 1249 (D. Colo. 1998). Toth appeals from the grant of summary judgment.

## II.    DISCUSSION

### A.    Standard of Review

This court reviews *de novo* a grant of summary judgment drawing all reasonable inferences in favor of the nonmoving party.[2] *See Trujillo v. University*

---

[1]Toth was fifty-nine years old at the time of her termination. Although the charges Toth filed with the EEOC contained allegations that Gates discriminated against her on the basis of her age, Toth's complaint contained no such claim for relief. The district court, however, addressed Toth's allegations of age discrimination and concluded that Toth had failed to establish pretext. In her opening brief, Toth does not challenge the district court's ruling and the issue is, therefore, deemed waived. *See State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 984 n.7 (10th Cir. 1994).

[2]This court's review of Toth's claims was made unnecessarily difficult by the paucity of record citations in both her opening and reply briefs. Although this court is not obligated to "search for the proverbial needle in a haystack," we have

*of Colo. Health Sciences Ctr.*, 157 F.3d 1211, 1213 (10th Cir. 1998); *Curtis v. Oklahoma City Pub. Sch. Bd. of Educ.*, 147 F.3d 1200, 1214 (10th Cir. 1998). When, as in this case, the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying "a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 644, 671 (10th Cir. 1998).

## B.    Breach of Contract and Promissory Estoppel Claims

"An employee who is hired in Colorado for an indefinite period of time is an 'at will employee,' whose employment may be terminated by either party without cause and without notice, and whose termination does not give rise to a cause of action." *Continental Air Lines, Inc. v. Keenan*, 731 P.2d 708, 711 (Colo. 1987) (en banc). Oral or written statements made by an employer restricting the employer's right to terminate an employee, however, may form the basis of a breach of contract or promissory estoppel claim. *See id*. at 711-12; *see also Soderlun v. Public Serv. Co. of Colo.*, 944 P.2d 616, 621 (Colo. Ct. App. 1997) . Toth argued to the district court that her at-will employment relationship with Gates was altered by: (1) a manual prepared by Gates entitled "Policies and

---

made reasonable efforts, where appropriate, to review all of the record evidence which might support Toth's claims. *Gamble, Simmons & Co. v. Kerr-McGee Corp.*, 175 F.3d 762, 773 n.5 (10th Cir. 1999).

Procedures," (2) a publication prepared by Gates entitled "Handbook for Gates' Associates," (3) the application she signed at the time she sought employment with Gates, (4) Gates' Corporate Code of Business Conduct, and (5) oral statements made by Toth's supervisor, Doug Schneider.[3]  The premise of Toth's argument is that these written and oral statements imposed restrictions on Gates' right to terminate her employment.

The district court determined that Toth's breach of contract and promissory estoppel claims should be dismissed because Toth failed to show the existence of an offer of employment or a promise upon which she could reasonably rely.  *See Soderlun*, 944 P.2d at 619 (holding that statements relied upon by a plaintiff as the basis for breach of contract or promissory estoppel claims must be "of such a nature as to constitute a legally binding promise upon which plaintiff[] could reasonably rely").  Toth renews her argument on appeal.  Our analysis of Toth's claims is governed by the precept that Toth may not aggregate the documents upon which she relies to prove the existence of an enforceable promise but must show the elements of a contract as to each document.  *See Vasey v. Martin Marietta Corp.*, 29 F.3d 1460, 1464-65 (10th Cir. 1994) (applying Colorado law).

---

[3]In her deposition, Toth also testified that enforceable agreements were created when she drafted a plan for her work and when her supervisor signed a "quality manual."  Toth's appellate briefs do not contain a record citation to these documents and it does not appear that they are included in the record on appeal. This court, thus, refuses to speculate on their contents.

The first page of Gates' Policies and Procedures Manual consists solely of the following language under the capitalized heading "IMPORTANT NOTICE TO ALL EMPLOYEES":

> The information contained in this Personnel Policies and Procedures Manual is intended to provide guidance for Gates' personnel-related practices and is not a guarantee of employment nor an expressed or implied contract. . . .
> Employment with Gates is terminable at the will of either the employee or Gates, at any time, without notice, without cause and without any specific prior disciplinary procedures.

Similarly, under the capitalized heading "IMPORTANT NOTICE TO ALL ASSOCIATES," the first page of the Handbook contains the following provision printed in a type-face different from the other type-face appearing on the page,

> The information contained in this Associate Handbook is intended to provide general information about Gates' practices and programs and does not constitute an expressed or implied contract guaranteeing the rights of any associate permanently. . . . Employment with Gates is terminable at the will of either the associate or Gates, at any time, without notice, cause or any specific disciplinary procedures, except as otherwise stated herein.

Summary judgment in favor of the employer on an employee's breach of contract and promissory estoppel claims may be appropriate if "the employer has clearly and conspicuously disclaimed intent to enter a contract limiting the right to discharge employees." *Ferrera v. Nielsen*, 799 P.2d 458, 461 (Colo. Ct. App. 1990). Here, both disclaimers were clearly worded and conspicuously located on the first page of both the Manual and the Handbook. Additionally, both

-8-

disclaimers were printed in italicized font, rendering them more prominent than other provisions in the documents.

Even when a written document contains a clear and conspicuous disclaimer, it can still form the basis of either a breach of contract or promissory estoppel claim if it also "contains mandatory termination procedures or requires 'just cause' for termination." *Evenson v. Colorado Farm Bureau Mut. Ins. Co.*, 879 P.2d 402, 409 (Colo. Ct. App. 1993). Toth, however, does not direct this court to any specific provision in either the Manual or the Handbook that would support her claims, but simply states "Gates had polices, practices and/or procedures which referenced discipline for inappropriate conduct, fair treatment, non-discrimination, and continued employment based upon merit."

Taking as true Toth's allegation that the Manual and the Handbook contain Gates' "policies, practices and/or procedures," general statements describing an employer's present policies are insufficient to support a claim for breach of contract or promissory estoppel. *See Orback v. Hewlett-Packard Co.*, 97 F.3d 429, 432 (10th Cir. 1996) ("[G]eneral indefinite policy statements do not abrogate employment at will.") (applying Colorado law); *see also Soderlun*, 944 P.2d at 620. In light of the clear and conspicuous disclaimers present in both the Manual and the Handbook, and the lack of any evidence pinpointing definite and specific provisions that conflict with those disclaimers, this court agrees with the district

court's conclusion that Toth has failed to identify an alleged promise sufficient to support her breach of contract or promissory estoppel claims. *See Soderlun*, 944 P.2d at 620 (holding that alleged promise must "be sufficiently specific so that the judiciary can understand the obligation assumed and enforce the promise according to its terms").

At the time Toth initially sought employment with Gates, she completed and signed a job application. The last page of the application contained a paragraph headed by the word "Affidavit." Toth's signature appears at the end of this paragraph. The following sentence appears in the middle of the paragraph, "If employed by The Gates Rubber Company or any associate company or companies, it is not for a definite period and may be terminated at any time by either party upon such notice as the one terminating it feels should be given." The application also contains a statement at the top of the first page which reads, "This company has a policy of employment on merit without discrimination because of age, race, color, religion, creed, national origin or sex." It is upon this statement that Toth relies to support her claim that the application altered her at-will employment relationship with Gates.

Although the disclaimer in the application is not clear and conspicuous, the statement upon which Toth relies is nothing more than a general expression of Gates' policy that employment with Gates is based not on age, race, color,

religion, creed, national origin, or sex but on merit. General policy statements are insufficient to support claims for breach of contract or promissory estoppel. *See id.*

Toth fails to identify any specific provision in Gates' Code of Conduct that would support her breach of contract or promissory estoppel claims. That document, at best, contains nothing more than general descriptions of Gates' present policies governing employee conduct.[4] It too, therefore, cannot form the basis for Toth's claims. *See id.*

Toth's contention that Schneider made oral representations likewise fails to provide support for her breach of contract and promissory estoppel claims. In her affidavit and in her deposition testimony, Toth stated that at the time she was placed on probation Schneider told her that if the conditions of her probation were met her employment with Gates would not be terminated. Assuming, without deciding, that Schneider's comments, if made, constituted something more than a description of Gates' policies or a forecast of the likelihood of Toth remaining employed by Gates, the comments are nothing more than "vague

---

[4]The purpose of the Code of Conduct is described on page two of that document where it states, "This Code is a unilateral statement of policy by The Gates Corporation. Nothing in this Code is intended to create enforceable employee contract rights."

assurances" not sufficiently definite, as a matter of law, to support Toth's breach of contract or promissory estoppel claims. *See Vasey*, 29 F.3d at 1464.

Based on our review of the record, this court concludes that the district court properly granted summary judgment in favor of Gates on Toth's breach of contract and promissory estoppel claims.[5]

## C.    Equal Pay Act Claims

Toth also claims she was paid less than two male co-workers in contravention of the Equal Pay Act. *See* 29 U.S.C. § 206(d)(1). To establish a prima facie case under the Equal Pay Act, a plaintiff must demonstrate "that (1) she was performing work which was substantially equal to that of the male employees considering the skills, duties, supervision, effort and responsibilities of the jobs; (2) the conditions where the work was performed were basically the same; (3) the male employees were paid more under such circumstances." *Tidwell v. Fort Howard Corp.*, 989 F.2d 406, 409 (10th Cir. 1993). Toth's opening appellate brief is completely devoid of any record citations that establish any element of her prima facie case. Toth not only fails to set out the elements of the prima facie case, she fails to even inform this court of her rate of pay or the

---

[5]In light of this court's disposition of Toth's breach of contract and promissory estoppel claims, it is unnecessary for us to also address Gates' alternative contention that Toth's claims fail, in their entirety, by the application of the after-acquired evidence defense.

-12-

rate of pay received by the two individuals who were allegedly paid more than her. Toth does not mention her Equal Pay Act claim in her reply brief. Without any citation to the record, it is impossible for this court to evaluate the evidence, if any, upon which Toth relies to support her contention that she was paid less than two male co-workers.[6] We refuse to engage in speculation and thus conclude that the district court properly dismissed Toth's Equal Pay Act claims for failure to present genuine issues of material fact which would support those claims.

**D. Claims Alleging Discrimination Based on National Origin and Sex**

Toth raises several claims based on Title VII of the Civil Rights Act of 1964, as amended. *See* 42 U.S.C. § 2000e-2(a). Specifically, Toth claims the decision to discharge her was based upon her sex and/or national origin. Toth also claims she failed to receive four promotions because of her sex and/or

---

[6]Toth alleges, again without record support, that she requested certain documents in discovery necessary to respond to Gates' allegation that she had failed to offer any evidence supporting her Equal Pay Act claim. This contention also appears in the brief Toth filed with the district court in response to Gates' motion for summary judgment. Assuming, without deciding, that this contention, if true, has any relevance to the matter before this court, and further assuming that Toth's statement could be properly construed as a request for a continuance pursuant to Rule 56(f) of the Federal Rules of Civil Procedure, Toth has failed to submit an affidavit specifically demonstrating how the requested discovery would provide evidence relevant to the motion for summary judgment. *See Pasternak v. Lear Petroleum Exploration, Inc.*, 790 F.2d 828, 832-33 (10th Cir. 1986) (holding that district court did not abuse its discretion in granting summary judgment where nonmoving party failed to file an affidavit explaining the alleged need for additional discovery).

national original.  Finally, Toth claims she was paid less than co-workers who did not share her protected attributes.

A plaintiff alleging violations of Title VII must present either direct or indirect evidence sufficient to show intentional discrimination.  *See Shorter v. ICG Holdings, Inc.*, 188 F.3d 1204, 1207 (10th Cir. 1999).  To support each of her Title VII claims, Toth has elected to rely on indirect evidence of discrimination by employing the burden-shifting framework first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).  Toth, thus, bears the initial   burden of establishing a prima facie case by a preponderance of the evidence.  *See Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252-53 (1981).  The burden of production then shifts to Gates who must articulate a legitimate, nondiscriminatory reason for the adverse employment action Toth suffered.  *See McDonnell Douglas*, 411 U.S. at 802.  Once Gates meets this burden, Toth can avoid summary judgment only if she can show discriminatory motive or, alternatively, show that Gates' proffered explanation is pretextual.  *See Reeves v. Sanderson Plumbing Prods., Inc.*   , No. 99-536, 2000 WL 743663, at *9 (U.S. June 12, 2000) ("[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.");   *see also Randle v. City of Aurora*   , 69 F.3d 441, 453 (10th Cir. 1995).    A plaintiff can

show pretext by revealing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (quotations omitted).

### 1.    Discriminatory Discharge Claims

Both Toth and Gates contend that Toth can establish a prima facie case of discriminatory discharge by showing that: (1) she is a member of a protected class, (2) she was qualified for the job she was performing, (3) she was the subject of an adverse employment action, and (4) she was treated less favorably than employees outside the protected group. Gates concedes that Toth has introduced sufficient evidence to satisfy the first and third elements of her prima facie case but argues that she has failed to demonstrate she is qualified or she was treated less favorably than similarly-situated co-workers who do not share her protected attributes.

Although neither party has brought the controlling case law to this court's attention, it is well-settled in this circuit that "a plaintiff may make out a prima facie case of discrimination in a discharge case by credible evidence that she continued to possess the objective qualifications she held when she was hired, or by her own testimony that her work was satisfactory, even when disputed by her

employer, or by evidence that she had held her position for a significant period of time." *MacDonald v. Eastern Wyo. Mental Health Ctr.*, 941 F.2d 1115, 1121 (10th Cir. 1991) (citations omitted); *see also Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1316 n.11 (10th Cir. 1999) (holding, in a failure-to-hire case, that plaintiff had met her prima facie burden by showing, through credible evidence that included plaintiff's own testimony, that she was minimally qualified for the position she sought, even though the defendant disputed that evidence). In support of her contention that she was qualified to perform the job from which she was terminated, Toth has offered the testimony of her co-worker, Steve Letherland ("Letherland"), who testified in his deposition that he believed Toth was both capable of performing her job and performing it sufficiently at the time of her termination. *See Kenworthy v. Conoco, Inc.*, 979 F.2d 1462, 1470 (10th Cir. 1992) (holding, in a failure-to-promote case, that plaintiff met her prima facie burden of showing she was qualified through her own testimony and that of co-workers who were in a position to know the plaintiff's qualifications). In her affidavit, Toth asserts that she is qualified and she has included relevant documents in the record to back up that assertion. There is no evidence that Toth no longer possessed the objective qualifications she held when she was hired for the position in the Materials Analysis Laboratory. The district court, thus, erred

-16-

when it concluded that Toth failed to show she was qualified for the position from which she was terminated.

Both parties next argue over whether Toth was able to demonstrate that she was treated less favorably than similarly-situated employees who did not share her protected attributes. In finding that Toth had failed to satisfy the fourth element of her prima facie case, the district court concluded that Toth had failed to demonstrate that the individuals to whom she compared herself were similarly-situated. On appeal, Gates again disputes Toth's assertions that these individuals were similarly-situated.

It is unnecessary for this court to address the question of whether Toth has demonstrated that the individuals to whom she compares herself are similarly-situated. Although Toth *may* satisfy the fourth element of her prima facie burden by presenting evidence that she was treated less favorably than similarly-situated employees, in a discriminatory discharge case a plaintiff may also satisfy the fourth element by demonstrating that she was replaced by someone outside the protected class. [7] *See Crawford v. Northeastern Okla. State Univ.*, 713 F.2d 586,

_____

[7]Toth may also be able to satisfy her prima facie burden simply by introducing evidence that the position was not eliminated, without also demonstrating that she was replaced by someone outside her protected class. *See Perry v. Woodward*, 199 F.3d 1126, 1140 (10th Cir. 1999) (holding that Hispanic plaintiff alleging discriminatory discharge on the basis of race had satisfied the fourth element of the prima facie test without showing that her replacement was outside her protected class), *cert. denied*, 120 S. Ct. 1964 (2000).

588 (10th Cir. 1983) (holding that female plaintiff had established the fourth element of her prima facie case by introducing evidence that the position from which she was discharged was filled by a man). It is uncontested that Toth was replaced by an Anglo male. Thus, Toth has satisfied the fourth element of her prima facie case.

Toth concedes that Gates has articulated a facially non-discriminatory reason for her discharge, i.e., poor job performance. Thus, the inquiry moves to whether Toth was able to demonstrate that Gates' proffered explanation is a pretext for unlawful discrimination. *See Randle*, 69 F.3d at 453.

Toth was terminated by her supervisor, Doug Schneider, who also authored her performance evaluations. Schneider stated in his deposition that during Toth's probationary period, he directly observed Toth at her job "a few times . . . but not many." Schneider, however, had no specific recollection of any of these incidents. Additionally, Schneider testified that he had not reviewed Toth's work in detail. Schneider testified that he relied primarily upon Steve Letherland to evaluate Toth's performance and arrive at the decision that her termination was warranted by her poor performance. Although Letherland testified that he had no direct involvement in the decision to terminate Toth, he also testified that he regularly communicated to Schneider his criticisms of Toth's written communication skills and her inability to complete her assignments. The record

-18-

contains a document, authored by Letherland, identifying those specific areas in which Toth needed to improve.

Letherland also testified, however, that while he occasionally found it difficult to comprehend Toth's written and oral communication, her communication was not less than acceptable. Letherland further testified he believed Toth was capable of performing her job and that at no point did he believe Toth's job performance merited her discharge. Because Letherland supplied Schneider with the information upon which Schneider relied in making the decision to terminate Toth, this court concludes that a reasonable factfinder could rationally conclude from the contradictory evidence presented by Toth that Gates' proffered reason for terminating Toth was pretextual. [8] The district court erred when it concluded that Toth had not presented sufficient evidence of pretext to survive summary judgment on her discriminatory discharge claims.

### 2. Failure-to-Promote Claims

[8] In light of this conclusion, it is unnecessary for this court to evaluate Toth's other evidence of pretext including Toth's assertions that: (1) she was treated less favorably than similarly-situated male co-workers and (2) Schneider, Letherland, and others made disparaging remarks about her accent and ethnenticity. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804 (1973) (discussing the comparisons between plaintiff and his similarly-situated co-workers at the pretext stage); *Carino v. University of Okla. Bd. of Regents*, 750 F.2d 815, 819 (10th Cir. 1984) (holding that comments regarding a plaintiff's accent may constitute indirect evidence of discrimination).

A plaintiff alleging violations of Title VII must file a charge of discrimination with the EEOC "within three hundred days after the alleged unlawful employment practice occurred." *See* 42 U.S.C. § 2000e-5(e)(1). A plaintiff may not file a civil lawsuit unless she has first filed a timely charge with the EEOC. *See Aronson v. Gressly*, 961 F.2d 907, 911 (10th Cir. 1992). In her deposition, Toth alleged she applied for but was denied promotions in 1982 or 1983, 1987 or 1988, 1994 or 1995, and 1997. Toth filed her first charge with the EEOC on August 13, 1996. Thus, with the exception of the 1997 incident, Toth failed to file charges with the EEOC within the 300-day period. Toth sought to avoid the dismissal of her untimely failure-to-promote claims by attempting to invoke the continuing violation doctrine.

The district court addressed the issue and concluded that Toth had failed to establish a continuing violation. Further, the court concluded that Toth had failed to present sufficient evidence to support the one failure-to-promote claim that was not time barred.

Under the continuing violation doctrine, a plaintiff may base her claims of unlawful discrimination on incidents occurring outside the statutory time limitations of Title VII if she is able to demonstrate that those incidents are not discrete unrelated acts but, instead, "constitute a continuing course of discrimination." *Martin v. Nannie and The Newborns, Inc.*, 3 F.3d 1410, 1415

-20-

(10th Cir. 1993). To prevail under a continuing violation theory, therefore, Toth "must show that events inside and outside the statutory period share commonality and are related acts of discrimination." *Robbins v. Jefferson County Sch. Dist. R-1*, 186 F.3d 1253, 1257 (10th Cir. 1999)

Although Toth correctly points out in her appellate brief that the question of whether a continuing violation has occurred "is one of fact," she then fails to reference even one fact to support her argument. There is not a single reference in Toth's appellate brief to any of the three positions she allegedly sought prior to 1997. Toth's entire appellate argument, instead, centers solely on the failure to promote her to the position in Gates' Air Springs Department in 1997. This argument consists of a two-sentence paragraph in which Toth asserts, without reference to either the record or any legal authority that she "was better qualified than the individual who obtained the position, including based upon prior experience and the fact that she had held that specific job."

An appellant has the responsibility to provide this court with specific citations to the record and to tie relevant facts to her legal arguments. *See* Fed. R. App. P. 28(a)(9)(A) ("The appellant's brief must contain . . . the argument, which must contain: appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies . . . ."); *see also United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (per curiam)

("Judges are not like pigs, hunting for truffles buried in briefs."). Toth has utterly failed to meet this responsibility and this court, thus, treats all her failure-to-promote claims as waived.

### 3. Wage Discrimination Claims

Toth also claims she was paid less than two male co-workers in violation of Title VII. A plaintiff who raises a Title VII wage discrimination claim must show, as part of her prima facie burden, that she was paid less than the male employees to whom she compares herself. *See Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1363 (10th Cir. 1997). After a thorough review of the record, we agree with the district court's conclusion that Toth has presented no genuine issue of material fact sufficient to satisfy her prima facie burden. Although she attempts to compare herself to two male co-workers, Toth has not directed this court to any record evidence indicating the rate of pay she received or the rate of pay received by the two individual to whom she attempts to compare herself. Toth, therefore, has failed to demonstrate that these individuals received a higher wage than she received. The district court, thus, properly granted summary judgment in favor of Gates on Toth's Title VII wage-discrimination claims.

### E. Retaliation Claims

Toth also claims Gates retaliated against her for engaging in an activity protected by Title VII. Specifically, Toth alleges that the negative performance

evaluations she received from Schneider upon which her probation and eventual termination were based, were given in retaliation for the complaints she filed with the EEOC. [9] Gates concedes that the decision to terminate Toth's employment was based on the negative performance evaluations she received.

To establish her prima facie case of retaliation, Toth must show: "1) she engaged in protected opposition to discrimination or participation in a proceeding arising out of discrimination; 2) adverse action by the employer subsequent to the protected activity; and 3) a causal connection between the employee's activity and the adverse action." *Archuleta v. Colorado Dep't. of Insts., Div. of Youth Servs.*, 936 F.2d 483, 486 (10th Cir. 1991). On appeal, Gates argues that Toth has failed to satisfy the second and third elements of her prima facie case.

Gates argues the negative performance evaluations Toth received after she filed charges with the EEOC cannot constitute adverse employment actions sufficient to satisfy the second element of her prima facie case. In support of this argument, Gates directs this court to a case decided by the Seventh Circuit Court of Appeals. *See Smart v. Ball State Univ.*, 89 F.3d 437, 442 (7th Cir. 1996)

---

[9]In the initial charge she filed with the EEOC, Toth stated that she had already "lodged several complaints to Gates [sic] EEO department." Although Toth does not disclose the dates on which she complained to Gates' internal EEO department, those complaints also constitute protected activities under Title VII. *See Robbins v. Jefferson County Sch. Dist. R-1*, 186 F.3d 1253, 1258 (10th Cir. 1999).

(holding that the receipt of unjustified performance evaluations, without additional evidence the employee was placed on probation, does not constitute an adverse employment action sufficient to support a Title VII retaliation claim). Gates, however, fails to acknowledge that *this* court liberally construes the phrase "adverse employment action." *See Gunnell v. Utah Valley State College*, 152 F.3d 1253, 1264 (10th Cir. 1998). This court has held that actions having an adverse impact on future employment opportunities can constitute adverse employment actions for purposes of Title VII retaliation claims. *See Berry v. Stevinson Chevrolet*, 74 F.3d 980, 986 (10th Cir. 1996). Because Toth's ultimate discharge was based on the negative performance evaluations she received after she had filed charges with the EEOC, we conclude that she has made a showing, sufficient to withstand summary judgment, that she suffered an adverse employment action when she received the negative performance evaluations.

Gates does not argue that Toth has failed to show a causal connection between the series of charges she filed with the EEOC and her receipt of the negative performance evaluations upon which her probation and ultimate termination were based. [10] However, a "causal connection may be demonstrated

---

[10]Gates' argument that Toth has failed to meet the third element of her prima facie case is based solely on its assumption that the only adverse employment action Toth suffered was her termination. Gates argues that Toth has failed to show a causal connection between her termination and the protected activity in which she engaged because her termination occurred more than eight

by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *Burrus v. United Tel. Co. of Kan., Inc.*, 683 F.2d 339, 343 (10th Cir. 1982). Toth filed a charge with the EEOC on August 13, 1996. Toth's first negative performance evaluation is dated August 15, 1996 and was signed by Toth and Schneider on August 16, 1996. Toth, thus, has shown that the adverse employment action she suffered occurred two days after she engaged in a protected activity. Toth has also presented evidence that she received additional negative job reviews over the course of the same period in which she filed a series of supplemental charges with the EEOC. This court concludes that Toth has satisfied the third element of her prima facie case by presenting evidence that the negative performance evaluations she received were temporally related to the filing of her charges with the EEOC. *See Marx v. Schnuck Mkts., Inc.*, 76 F.3d 324, 329 (10th Cir. 1996) (holding that a causal connection can be inferred from "protected conduct closely followed by adverse action").

Gates has stated that Toth received her negative performance evaluations because of her poor performance. The record is sufficiently developed to allow this court to address the question of whether Gates' proffered explanation is

---

months after she filed her initial complaint with the EEOC. Gates' argument has no relevance in light of our conclusion that Toth's receipt of the poor performance evaluations constituted an adverse employment action.

pretextual. *See Randle*, 69 F.3d at 453. In an affidavit, Toth supports her argument that Gates' proffered explanation for her negative performance evaluations is pretextual with the following statement,

> I was informed during my performance evaluation by Mr. Douglas Schneider that essentially, as a result of my creating so much negative stuff around Gates that there was no other way to go, referring to my negative performance evaluation. This comment was followed up with a statement to the effect that my EEO complaints had made the year miserable. As a result, I understood that the negative job evaluation was directly related to my complaints of discrimination/harassment.

Although Schneider's comments are ambiguous and would be insufficient to constitute direct evidence of unlawful discrimination, they are sufficient to raise a genuine issue of material fact as to whether Gates' proffered explanation for Toth's negative performance evaluations is pretextual. Based on its erroneous assumption that Toth's termination is the only adverse employment action sufficient to support her retaliation claim, Gates concedes as much in its appellate brief when it states, "At most, the alleged statement evidences a motivating factor behind the poor performance review at the time of the alleged statement." Thus, Toth has satisfied her burden of showing pretext and the district court erred when it granted summary judgment in favor of Gates on Toth's retaliation claim.

### F.    Hostile Work Environment Claims

Construing Toth's complaint to include harassment claims based on a hostile work environment theory, Gates argued before the district court that Toth

had failed to present sufficient evidence to support this claim because she had failed to present any evidence that the alleged harassment to which she was subjected was pervasive or severe enough to alter the terms, conditions, or privileges of her employment. *See Bolden v. PRC, Inc.*, 43 F.3d 545, 551 (10th Cir. 1994). In her reply brief to the district court, Toth did not direct the court to specific incidents but argued that the entire statement of facts included in her brief supported her hostile work environment theory. The district court addressed the issue by evaluating four incidents in which negative comments regarding Toth's national origin were allegedly made by co-workers. The court concluded that Toth's allegations were insufficient to support a hostile work environment claim. Toth's appellate argument on this issue consists of a single paragraph that is essentially identical to the paragraph included in her brief to the district court.

To survive summary judgment on a hostile environment claim, Toth "must show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Davis v. United States Postal Serv.*, 142 F.3d 1334, 1341 (10th Cir. 1998) (quotations omitted). After a review of the entire record, this court concludes that Toth has failed to raise a genuine issue of

material fact to support her harassment claims based on a hostile work environment theory. [11] Any indignities she allegedly suffered were not sufficiently severe or pervasive enough to alter the conditions of her employment.

## III. CONCLUSION

Upon review of the parties' appellate briefs and *de novo* review of the district court's memorandum order and judgment and the entire record on appeal, this court **affirms** the grant of summary judgment in favor of Gates on Toth's breach of contract, promissory estoppel, Equal Pay Act, failure-to-promote, and Title VII wage discrimination claims. This court **reverses** the district court's grant of summary judgment on Toth's Title VII retaliation and discriminatory discharge claims and **remands** to the district court for further proceedings consistent with this opinion.

ENTERED FOR THE COURT:

Michael R. Murphy
Circuit Judge

[11]The district court focused it's analysis on whether Toth had shown a hostile work environment based on comments allegedly made about her national origin. In her appellate brief, Toth argues that the hostile work environment was based on gender-related comments. The record is insufficient to support a hostile work environment claim premised either on comments relating to Toth's gender or her national origin.