637 A.2d 1371

**Paul Richard STARR and Deanna Dell Starr, Appellants,**

v.

**O–I BROCKWAY GLASS, INC.**

**Paul Richard STARR and Deanna Dell Starr, Appellants,**

v.

**O–I BROCKWAY GLASS, INC.**

Superior Court of Pennsylvania.

Argued Dec. 2, 1993.

Decided March 8, 1994.

256

David S. Pontzer, Ridgway, for appellants.

George Crompton, Pittsburgh, for appellee.

Before ROWLEY, President Judge, and JOHNSON and HESTER, JJ.

ROWLEY, President Judge:

Paul and Deanna Starr, plaintiffs in the trial court, appeal from two orders of the court. In the first order, the motion for summary judgment of O–I Brockway Glass, Inc. ("O–I Brockway"), defendant in the trial court, was granted; in the second order, the Starrs' petition to amend their complaint was denied. Upon careful consideration, we reverse the first order and vacate the second order.

This action arose out of a disputed contract between the Starrs, husband and wife, and O–I Brockway. On June 20, 1989, the parties entered a contract whereby the Starrs would sell land, upon which they were operating a trailer and recreation vehicle firm, to O–I Brockway. Of note, the contract provided as follows:

> The purpose for which Buyer is purchasing Sellers' property is to construct a warehouse on Sellers' property. In order to construct the warehouse, Buyer is also purchasing additional property adjacent to Sellers[, the Berlin property.] ... The sale that is subject to this Agreement is fully conditioned on Buyer's ability to purchase and close on the

Berlin property as well as proceed with the construction of the warehouse.... Said ability to purchase and close on the Berlin property, as well as the ability to proceed with construction of the warehouse, shall be determined by the Buyer in its sole discretion.

Agreement of Sale, 6/20/89 at 6. The contract also specified a closing date, referred to as a "settlement" date, of August 1, 1989 or a "time being agreed to be of the essence." *Id.* at 5.

The Starrs allege that on the date the contract was made, an agent for O–I Brockway requested the Starrs to immediately vacate the premises by evicting tenants residing thereon and making inventory storage available for O–I Brockway. The Starrs complied with this request, after having informed the agent that the request would require the Starrs to drastically reduce their own inventory and lose discounts and inventory for future sale. The Starrs claim that "[i]n compliance with the request ..., [they] did not place early orders for inventory and thus substantially reduced the goods which they had to sell" and suffered monetary losses. First Amended Complaint at 2.

O–I Brockway has not acted on the contract, and apparently no longer intends to purchase the Starrs' property. O–I Brockway explains that "[i]n the past three and one-half years, ... relying on both the contingencies inherent in the agreement and [the Starrs'] failure to assert claims on the agreement, [O–I Brockway] has taken significant steps away from the plan envisioned and embodied in the agreement [and ...] no longer has options to pursue construction and development as called for in the agreement." Brief of O–I Brockway in Opposition to Petition for Leave to Amend Complaint, 2/12/93 at 3. Based on the fact that the sale was conditioned on O–I Brockway's ability to purchase the "Berlin" property and to proceed with construction of a warehouse, O–I Brockway has characterized the contract as completely discretionary and the non-performance of the contract as "solely at O–I's discretion." Appellate Brief of O–I Brockway at 14.

In their first amended complaint, the Starrs requested recovery for losses sustained as a result of making their property immediately available to O–I Brockway. On December 23, 1992, the Starrs petitioned to amend their first amended complaint in order to assert two additional theories of recovery: i) specific performance and ii) recovery of the total contract price. As stated above, the parties are here on appeal following the trial court's denial of the Starrs' petition to amend their first amended complaint and the court's grant of O–I Brockway's motion for summary judgment.

O–I Brockway requested summary judgment based, in part, on the assertion that the parol evidence rule [1] bars the consideration of the oral request made of the Starrs by the agent of O–I Brockway to immediately vacate their property. The trial court agreed with O–I Brockway and reasoned that the language of the contract governed, specifically that the transfer of property was *contingent* on O–I Brockway's ability to procure property from a third party; evidence suggesting that O–I Brockway was taking *immediate* possession of the property would have the effect of altering the contract's terms and therefore could not be considered under the parol evidence rule.

Before we consider the issues raised on appeal, the legal effect of the contract in this case needs clarification. We acknowledge that the transfer of property as contracted by the parties was contingent on O–I Brockway's ability to procure the property of a third party. Even so, this did not make the decision whether to perform the contract solely at O–I Brockway's *discretion* as O–I Brockway suggests. This is not

---

1. "The general rule … is that parol evidence of a contemporaneous oral agreement is not admissible to alter, vary, add to, modify, or contradict a written instrument complete within itself unless the oral agreement was omitted through fraud, accident, or mistake." *Gemini Equipment Co. v. Pennsy Supply, Inc.*, 407 Pa.Super. 404, 413, 595 A.2d 1211, 1215 (1991). This is particularly true if the oral agreement "would naturally and normally have been contained in the written agreement." *Id.* The "written contract, if unambiguous, must be held to express all of the negotiations, conversations, and agreements made prior to its execution." *Id.*

a case where the contract was illusory,[2] such that O–I Brockway had the unfettered choice of whether to perform and the absolute, arbitrary right to cancel the agreement without further liability.

O–I Brockway was charged by the contract with determining whether it was *able* to purchase the property from the third party. If the Starrs had initially brought action against O–I Brockway to compel the purchase of their property, O–I Brockway could have successfully defended the suit only by proving that it was *unable* to complete the transaction with the third party, not merely that it did not *desire* to do so. *DiBenedetto v. Di Rocco*, 372 Pa. 302, 304–05, 93 A.2d 474, 475 (1953) (confirms mutuality of obligation). O–I Brockway was under no duty to ensure that the third party transaction take place, but a court would "supply a term imposing on [O–I Brockway the] duty to make reasonable efforts" to bring about the transaction. Restatement of Contracts 2d, Contractual Obligations § 225 comm. d, illus. 8; *see also Id.* at § 205 Duty of Good Faith and Fair Dealing (duty of good faith in the performance of a contract). Ergo, O–I Brockway misperceived its duties under the contract if it believed, as asserted, that "[t]he Starrs had no foundation for a claim seeking specific performance of a contract that was completely discretionary." Appellate Brief of O–I Brockway at 14.

■ With the legal effect of the contract in mind, we consider the issues pursued on appeal. First, the trial court concluded that, if the alleged oral request by the agent of O–I Brockway had the effect of imputing a term of immediate possession in the contract, the oral request altered the contin-

2. "Words of promise which by their terms make performance entirely optional with the 'promisor' whatever may happen, or whatever course of conduct in other respects he may pursue, do not constitute a promise." Restatement of Contracts 2d, Meaning of Terms, § 2 comm. e. Rather, if the provisions of a contract are optional with the promisor, the contract is termed "illusory" and the promisee is not "justified in an expectation of performance." *Id.; see also Geisinger Clinic v. Di Cuccio*, 414 Pa.Super. 85, 606 A.2d 509 (1992) ("If the promise is entirely optional with the promisor, it is said to be illusory and, therefore, lacking consideration and unenforceable.")

gency term stated in the contract and therefore could not be considered under the parol evidence rule. We disagree.

■ If an agent for O–I Brockway did in fact request the immediate vacation of the Starrs' property, and the Starrs complied to their detriment with this request in order to accommodate O–I Brockway's expressed need for immediate storage space, O–I Brockway cannot now assert the parol evidence rule to preclude evidence of its own request as altering the "contingency" language in the contract. The doctrine of equitable estoppel provides that "the voluntary conduct [i.e., the request] of a party" may preclude him "from asserting rights against another who has justifiably relied upon such conduct and changed his position so that he will suffer injury if the former is allowed to repudiate the conduct." Black's Law Dictionary (1979) at 483; *e.g. Doppler v. Doppler*, 393 Pa.Super. 600, 574 A.2d 1101 (1990) (equitable estoppel "prevents a party from taking a position that is inconsistent with a position previously taken which is disadvantageous to the other"). The Starrs have alleged facts which warrant the opportunity to prove that equitable estoppel prevents O–I Brockway's assertion of the parol evidence rule.[3]

**3.** The Starrs indirectly make this argument on appeal, and assert the following facts in support: "[w]hether the condition [of performance] occurred or not was in the sole discretion of O–I Brockway.... O–I Brockway made an oral request of Starr that they turn the ... area over to O–I Brockway immediately. Starr complied with this request and gave O–I Brockway possession of the real estate.... Further, Starr submits that the use of the oral request of O–I Brockway, which was the reason for Starr to vacate the real estate, created a new promise *invoking reliance* and entitling Starr to damages under the contractual theory of promissory estoppel.... This promise could reasonably be expected to induce Starr to vacate on the reasonable belief that O–I Brockway would proceed to final settlement." Appellate Brief of the Starrs at 18, 19, 20 (emphasis added).

Equitable estoppel does not apply in this case as an affirmative defense which would have to be specifically pled; rather, it is being asserted against the defendant/appellee O–I Brockway to preclude it from raising the "defense" of the parol evidence rule. *See Paul v. Lankenau Hospital*, 375 Pa.Super. 1, 543 A.2d 1148 (1988) ("plaintiff may use it to preclude a defense from being raised"), *affirmed in part, reversed in part* 524 Pa. 90, 569 A.2d 346 (1990), *reargument denied.*

Even so, the parties dispute the material fact of whether an agent of O–I Brockway actually requested the Starrs to immediately vacate their property. In contrast, because the trial court concluded that evidence of the request was barred by the parol evidence rule, it determined that there was no disputed issue of material fact. In light of the erroneous basis for the trial court's determination and in accordance with our standard of review, we find that the trial court committed an error of law and that summary judgment was improperly granted. *Melat v. Melat,* 411 Pa.Super. 647, 654–55, 602 A.2d 380, 384 (1992) (summary judgment standard of review).

On remand, the Starrs can attempt to prove that the alleged request was made and may argue for the application of equitable estoppel. " 'Whether an estoppel results from established facts is a question for the determination of the court: ... It is for the jury to say whether alleged remarks were made, but it is for the court to decide whether they are susceptible of the inferences attributed to them. That statements should give rise to an estoppel they must be clear and reasonably certain in their intendment.' " *Nesbitt v. Erie Coach Company,* 416 Pa. 89, 96, 204 A.2d 473, 476 (1964) (citation omitted) (remanded for factual finding of whether alleged remarks were made).

Next, with respect to the appeal from the court's denial of the Starrs' petition to amend complaint, the court stated: "having granted the Defendant's Motion for Summary Judgment, we believe that it would be improper to permit the Plaintiff's [sic] to amend their Complaint at this point." Opinion of the Trial Court on Plaintiffs' Petition to Amend Complaint at 2. Because we reverse the grant of summary judgment, the basis for the trial court's denial of the petition to amend is now absent. Therefore, we vacate the order denying the petition to amend and remand to permit the trial court to reconsider the merits of the petition, without prejudice to the rights of the parties to appeal from any adverse order.

Order granting motion for summary judgment reversed. Order denying petition to amend complaint vacated and case remanded for further proceedings consistent with this opinion.