**FILED**
**United States Court of Appeals**
**Tenth Circuit**

UNITED STATES COURT OF APPEALS   February 1, 2012

**TENTH CIRCUIT**

**Elisabeth A. Shumaker**
**Clerk of Court**

CHAD D. SCARBOROUGH,

      Plaintiff-Appellant,

v.

LASALLE BANK NATIONAL
ASSOCIATION, as Trustee for First
Franklin Mortgage Loan Trust, Mortgage
Loan Asset-Backed Certificates Series
2007 FF2; MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS; FIRST
FRANKLIN FINANCIAL,

      Defendants-Appellees.

No. 11-4092
(D.C. No. 2:10-CV-00624-CW)
(D. Utah)

## ORDER AND JUDGMENT[*]

Before **BRISCOE,** Chief Judge, **EBEL** and **LUCERO**, Circuit Judges.

Plaintiff Chad Scarborough defaulted on his mortgage, resulting in foreclosure

proceedings and the sale of his home.  Scarborough then filed this action against the

mortgagee, as well as several other entities, claiming that the pre-default sale of his

mortgage and its securitization effectively prevented defendants from instituting

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

foreclosure proceedings against him. The district court granted summary judgment in favor of defendants. Scarborough now appeals. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

I

*Scarborough's mortgage loan*

On December 20, 2006, Scarborough purchased a home in South Jordan, Utah. To fund the purchase, Scarborough entered into a residential mortgage loan, in the amount of $237,000, with First Franklin Financial Corporation (First Franklin). First Franklin's security interest in the property was memorialized by a promissory note and a deed of trust naming Utah Mountain Title as trustee and Mortgage Electronic Registration Systems, Inc. (MERS) as beneficiary. The trust deed was recorded on December 22, 2006, in the office of the Salt Lake County Recorder.

*The sale and securitization of Scarborough's loan*

Scarborough's mortgage loan was subsequently sold and securitized. More specifically, on February 1, 2007, First Franklin entered into a mortgage loan purchase agreement with Merrill Lynch Mortgage Investors, Inc. (MLM Investors). Under the terms of that agreement, First Franklin agreed to sell to MLM Investors a group of mortgage loans, apparently including Scarborough's,[1] with an aggregate balance of $205,9889,567. The agreement provided that MLM Investors would in turn "create the

---

[1] The record on appeal does not appear to precisely identify whether Scarborough's mortgage was included in this group of loans. But the clear implication of the record is that it was.

2

First Franklin Mortgage Loan Trust, Mortgage Loan Asset-Backed Certificates, Series 2007-FF2 . . . under a pooling and servicing agreement . . . by and among [MLM Investors], as depositor, LaSalle Bank, National Association [(LaSalle)], as trustee . . . and Home Loan Services, Inc. [(Home Loan Services)]," as servicer. Aplt. App. at 11. The agreement further provided that, "[p]ursuant to the Pooling and Servicing Agreement, [MLM Investors] w[ould] assign . . . all of its right, title and interest in and to the Mortgage Loans to the Trustee [LaSalle] for the benefit of the Certificateholders."[2] Id. at 16.

On that same date (February 1, 2007), MLM Investors, Home Loan Services, and LaSalle entered into a Pooling and Servicing Agreement for the "First Franklin Mortgage Loan Trust, Mortgage Loan Asset-Backed Certificates, Series 2007-FF2." Id. at 56. The Pooling and Servicing Agreement provided that "[t]he ownership of each Mortgage Note, the Mortgage and the contents of the related Mortgage File [were to be] vested in the Trustee [LaSalle] on behalf of the Certificateholders." Id. at 138.

*The foreclosure*

On September 2, 2008, MERS, as nominee of First Franklin and beneficiary under the trust deed, assigned its beneficial interest in the trust deed to LaSalle. On December 2, 2008, eTitle Insurance Agency (eTitle) recorded a Substitution of Trustee. In that

---

[2] On that same date (February 1, 2007), MLM Investors purchased an even larger group of mortgage loans (totaling $2,394,022,629) from Merrill Lynch Mortgage Lending, Inc. (MLM Lending). All of those loans had apparently originated from First Franklin. It appears that this group of loans was securitized with the group of loans purchased directly from First Franklin, and held in trust for MLM Investors by LaSalle.

3

document, LaSalle explicitly ratified and confirmed all actions taken on its behalf by eTitle prior to the recording of the Substitution of Trustee.

On October 9, 2008, eTitle, acting as successor trustee, issued to Scarborough a notice of default and election to sell. That document indicated that Scarborough was in default on his monthly payment obligations under the promissory note. The default was not cured within three months after the filing of the notice of default. On May 19, 2010, eTitle, as successor trustee, held a trustee's sale of the property. The property was sold to U.S. Bank, National Association, as successor trustee to Bank of America, N.A., as successor by merger to LaSalle.

*The instant proceedings*

On June 7, 2010, Scarborough filed a complaint in the Third District Court of Salt Lake County, Utah, against LaSalle, MERS, First Franklin, and "John Does of Unknown Number," id. at 478, which Scarborough later identified as "the unknown investors" (presumably referring to the purchasers of the mortgage loan asset-backed certificates), Aplee. Supp. App. at 138. The complaint began by recounting the history of Scarborough's mortgage loan and the subsequent sale and securitization of that loan. The complaint in turn alleged that, "[a]s a result of the transfer of the debt as part of a securities transaction, and of the lack of [any] recordings [of any security interest by any transferee]," First Franklin and the other defendants "[we]re not the present owners of the debt or the obligee(s) thereon." Aplt. App. at 482. Relatedly, the complaint alleged that "[t]he Trust Deed ha[d] not been assigned or transferred of record, in whole or in part,"

4

and that the "[n]amed defendants, or one of them, [wa]s a mere custodian of the Note for others." Id.

Based upon these allegations, the complaint asserted five causes of action. The first cause of action, entitled "Injunctive Relief," sought an order "enjoining disposition of the subject realty by" the defendants. Id. at 485. The second cause of action, for "estoppel/declaratory judgment," sought the entry of an "Order declaring that defendants, including unnamed defendants who have asserted no assignment of the Trust Deed, lack any interest under the Trust Deed which may be enforced by lien upon or sale of the subject property." Id. at 486. The third cause of action, entitled "Declaratory Judgment," similarly sought entry of an "Order declaring that defendants . . . lack any interest under the Trust Deed which may be enforced by lien upon or sale of the subject property." Id. at 488. The fourth cause of action, entitled "Quiet Title," sought entry of an "Order . . . quieting title to the subject property in plaintiff and against defendants, . . . freeing title to the subject property of the lien of the Trust Deed and leaving the debt unsecured by any interest in the subject property." Id. at 489. The fifth cause of action, entitled "Refund, Fees and Costs," alleged that "Defendant Bank and Trustee's pretenses of authority to foreclose, or attempt to foreclose, under the Trust Deed were fraudulent," and in turn sought an order directing defendants "to pay to plaintiff its fees and costs, together with a reasonable attorney's fee . . . and to reimburse to plaintiff unnecessary fees and charges under the Note and Trust Deed." Id.

On July 7, 2010, LaSalle, MERS and First Franklin removed the case to federal

5

court on the basis of diversity jurisdiction. Nine days later, on July 16, 2010, these three defendants filed a motion to dismiss Scarborough's complaint pursuant to Fed. R. Civ. P. 12(b)(6). In support, defendants argued that "the Trust Deed was a valid and enforceable encumbrance on the Property and secured a valid and enforceable Note, which Note was indisputably in default at the time of the Trustee's Sale and [that] the actions taken by Defendants leading up to and including the Trustee's Sale were valid and authorized by Utah law." Aplee. Supp. App. at 2. In turn, defendants argued that "[t]he alleged sale and securitization of the Note d[id] not relieve [Scarborough] of his obligations under it, nor d[id] it affect Defendants' rights under the Trust Deed." Id.

In their supporting memorandum, defendants also asserted as follows:

> This case is but one of a series of nearly identical cases filed by Plaintiff's attorney on behalf of his clients as part of a "mortgage relief" scheme. The concept underpinning this scheme is that a defaulting borrower, whose home is noticed for sale or has been sold at a trustee's sale, may gain fee simple title to the subject property merely by asserting that the promissory note executed by the borrower has become unsecured because it has been "securitized" or made part of a trust pool. Plaintiff's claims in this case, like the cases it mirrors, are without merit and should be dismissed.

Id. at 8 (internal footnote, listing various cases filed by plaintiff's counsel, omitted).

Scarborough filed a response in opposition to the motion to dismiss. He argued, in pertinent part, that the purchasers of the certificates were the effective "owners of the [underlying] debt," and, as such, were the only ones who had the right to foreclose. Id. at 139. Relatedly, Scarborough argued that where a "loan has been securitized, the possessor of the Note is presumptively a custodian . . . for investors," and "may not

6

foreclose without demonstrating an express agency to do so on behalf of the investors." Id. at 141.

Defendants, in reply, asserted that Scarborough's "entire argument hinge[d] on his erroneous characterization of the home loan securitization process." Id. at 375. In particular, defendants argued that, contrary to Scarborough's assertions, "MBS [mortgage-backed securities] certificate holders do not have the authority to enforce a deed of trust," id., nor do they "own the underlying promissory notes of an MBS," id. at 376. Instead, defendants argued, "MBS certificate holders own an interest in the proceeds of the pool [i.e., the trust fund created pursuant to the pooling and servicing agreement], and nothing more." Id. at 377.

On February 4, 2011, the district court held oral argument on the defendants' motion to dismiss and, at the conclusion thereof, took the matter under advisement. Four days later, on February 8, 2011, Scarborough's attorney sent a one-page letter to the district court, along with a copy of the Pooling and Servicing Agreement that he referenced during the hearing on the motion to dismiss.

On February 15, 2011, the district court entered a docket text order stating as follows:

> The court has recently received Plaintiff[']s document entitled Pooling and Servicing Agreement, between Merrill Lynch Mortgage Investors, Inc. (Depositor), Home Loan Services, Inc. (Servicer), and LaSalle Bank National Association (Trustee), dated February 1, 2007. Noting that the document is over 420 pages, Plaintiff is ordered to provide Defendants and the court with all citations upon which he relies in supporting his arguments as raised in his pleadings and at the hearing on February 4, 2011, including

7

specific references to the provisions in the agreement Plaintiff contends supports his arguments. Plaintiff is to do so no later than February 20, 2011. The court also gives notice of its intent to rely on documents outside of the pleadings and convert the outstanding motion to dismiss to a motion for summary judgment, pursuant to Fed. R. Civ. P. 12(d). If any party believes additional supplemental evidence is needed as to whether there are additional issues of material fact, such evidence should be submitted to the court. Defendants are hereby given leave to provide supplemental briefing on the issue raised by Plaintiff regarding the nature of the interest conveyed or transferred, if any, as referenced in the document cited above [i.e., the letter from plaintiff's counsel]. Defendants are to file such briefing with the court no later than March 2, 2011. Plaintiff will likewise have until March 13, 2011 to respond, if he so chooses. Defendants may thereafter submit a reply, to be received no later than March 18, 2011. In crafting their briefs, the parties are admonished to take particular note of Fed. R. Civ. P. 56(c)(3) and cite to the materials they will provided [sic].

Aplt. App., Docket Sheet at 5, Entry #27.

On March 1, 2011, having requested and received an extension of time from the district court, Scarborough's counsel filed a written response to the docket text order. In that response, Scarborough's counsel stated that he was including "copies of the pertinent documents, with portions thereof presently believed by plaintiff to be pertinent highlighted in yellow." Aplee. Supp. App. at 831. But, he argued, "[t]he [district] court [could] not, upon receipt of the apparently pertinent documents from plaintiff, convert defendant's [sic] motion to dismiss to one for summary judgment, and cast the burden of proof upon plaintiff to disprove claims not yet made by defendants." Id. at 832.

On March 15, 2011, defendants filed a response to plaintiff's March 1, 2011 submission. Defendants first asserted that "[p]laintiff ha[d] failed to comply with the [district] [c]ourt's Order." Id. at 1313. "Instead of citing to specific portions of the

8

Documents he claim[ed] support[ed] his arguments," defendants asserted, "[p]laintiff merely highlight[ed] (literally, in yellow) portions of the Documents 'presently believed by plaintiff to be pertinent.'" Id. Defendants noted that Scarborough "d[id] not explain why he believe[d] those highlighted portions [we]re 'pertinent,' let alone how they support[ed] his arguments." Id. "Plaintiff's Response to the Order," they argued, "d[id] not provide even a modicum of clarity as to [his] interpretation of the Documents." Id. In short, defendants argued, plaintiff "ha[d] failed" "to demonstrate how the Documents support[ed] his arguments." Id.

Defendants in turn argued that, contrary to plaintiff's assertions, it was "entirely appropriate" for the district court to convert defendants' motion to dismiss to a motion for summary judgment. Id. at 1315. And, they argued, summary judgment in their favor was warranted:

> Plaintiff's case relies entirely on his assertion that Defendants "have ceased to have any interest in the Trust Deed" securing Plaintiff's debt, and thus Defendants "should not have taken action to foreclose such security absent proof of agency to do so on behalf of the present owner of such debts, the investors in the mortgage backed securities." (Complaint, ¶ 34.) Plaintiff has argued that the Documents support the assertion that "investors in the mortgage backed securities" presently own Plaintiff's debt, but has failed to point to any portion of the Documents that do so. This failure is fatal to Plaintiff's claims, and Defendants are entitled to summary judgment as a result.

Id. (internal footnote omitted).

On April 21, 2011, the district court issued a memorandum decision and order converting defendants' motion to dismiss to a motion for summary judgment and granting

9

summary judgment in favor of defendants. At the outset of its order, the district court

took Scarborough's counsel to task for submitting lengthy documents without providing

the court with any explanation of their relevance:

> The court has previously admonished counsel for advancing frivolous arguments, and for failing "to be more discriminating in his argumentation and responsible in his use of caselaw." Commonwealth Prop. Advocates v. Citimortgage, Inc., No. 2:10-CV-885, 2011 U.S. Dist LEXIS 16159, at *5 (D. Utah Feb. 16, 2011). Despite the court's admonitions regarding his poor briefing, counsel has taken new steps to further confuse the issues, delay litigation, and waste Defendants' resources and those of the court. As previously stated, Plaintiff's counsel proffered hundreds of pages of documents to the court during the hearing on February 4, 2011, which he admitted to have not fully read. In response to the court's order to produce "all citations" and "specific references to the provisions in the agreement Plaintiff contends supports his arguments," counsel submitted the same stack of documents, only now highlighted, with little explanation of how the highlighted portions were relevant to his argument. Such a submission is unhelpful. The court must conclude that counsel's use and submission of the documents were not for the purpose of advancing Plaintiff's case, but simply to delay. As such, it is obvious that this court's admonitions, threats of sanctions, and use of sanctions have not persuaded counsel to take the court seriously or raise his practice to a higher, more responsible standard. See Commonwealth, 2011 U.S. Dist LEXIS 16159 at *6. Counsel is hereby warned that further contempt will not only result in additional sanctions, but a referral to the court's disciplinary committee.

Aplt. App. at 694-95.

The district court then proceeded to address the documents submitted by

Scarborough and concluded that Scarborough's "anemic use of the evidence fail[ed] to

provide support for the most basic assumptions necessary to succeed on his complaint."

Id. In particular, the district court noted that Scarborough "fail[ed] to show . . . that the

securitization of the[] certificates also constitute[d] a securitization of the note or

10

underlying debt." Id. at 696. In fact, the district court noted, "the Servicing and Pooling agreement . . . stated that the certificates simply 'evidenc[ed] ownership of the entire Trust Fund.'" Id. (quoting Pooling and Servicing Agreement § 2.06, 76). Consequently, the district court concluded that there was no evidence "that the debt was ever securitized." Id. "[I]n the end," the district court concluded that "nothing ha[d] been presented to [it] that demonstrate[d] that the certificates represent[ed] anything more than an interest in all proceeds or cash-flows paid corresponding to the note, independent and separate from any right to collect the debt as asserted by Plaintiff." Id. at 697. "Because Plaintiff . . . failed to show that the debt as a right to collect the loans was securitized," the district court concluded, "there [wa]s nothing by which [it] c[ould] conclude that LaSalle [wa]s not the owner of both the trust holding the debt as evidenced by the note, and the beneficial interest under the trust deed." Id. Lastly, the district court concluded that Scarborough "ha[d] likewise failed to demonstrate that the foreclosure proceeding against him by eTitle Insurance Agency, acting for LaSalle, was improper." Id.

Final judgment was entered in favor of defendants and against Scarborough on April 22, 2011. Scarborough filed a notice of appeal on May 2, 2011.

II

On appeal, Scarborough challenges the district court's grant of summary judgment in favor of defendants. "We review the grant of summary judgment de novo, applying the same standard as the district court." Klen v. City of Loveland, 661 F.3d 498, 507 (10th Cir. 2011) (internal quotation marks omitted). Summary judgment is appropriate

11

"if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "We view the record on summary judgment in the light most favorable to the nonmoving party." Klen, 661 F.3d at 508.

*Scarborough's failure to file proper summary judgment pleadings and evidence*

Like the district court, we conclude that Scarborough's procedural failings were fatal to the claims asserted in his complaint. After the district court expressly notified the parties that it would be converting defendants' motion to dismiss into a motion for summary judgment, Scarborough's counsel responded by simply submitting to the district court a one-page letter accompanied by a copy of the Pooling and Servicing Agreement highlighted in certain places with a yellow marker. At no point did Scarborough's counsel submit any type of pleading to the district court explaining the purported significance of the highlighted passages. Nor did Scarborough's counsel submit to the district court a brief in opposition to summary judgment, or any other pleading that recounted the relevant facts and supported those facts with citations to any evidence. In light of these failings, the district court had no choice but to conclude that defendants were entitled to judgment as a matter of law with respect to all of the claims asserted in Scarborough's complaint. More specifically, the district court concluded, and we agree, that Scarborough's counsel failed to provide any evidence to support the allegations in the complaint (e.g., that the certificateholders were actually the owners of the promissory note that Scarborough signed, or that LaSalle, as trustee, lacked any interest in that note).

12

Scarborough now offers three excuses for his procedural failings, but we find no merit to any of them. First, Scarborough argues that the district court afforded him only three days after the hearing on defendants' motion to dismiss in which to submit documentation to support his claims, thus forcing his counsel to "resort[] to highlighting the documents to show the language thought pertinent." Aplt. Br. at 11. But Scarborough confuses the facts. Approximately three days after the hearing on defendants' motion to dismiss, Scarborough provided the district court with a plain copy of the Pooling and Servicing Agreement. After receiving and reviewing this submission, the district court issued an order affording Scarborough five days in which to submit relevant documentation. Scarborough immediately sought and was granted an additional nine days to respond to the court's order. Ultimately, at the end of the fourteen-day time period, Scarborough submitted a highlighted copy of the Pooling and Servicing Agreement. Thus, in sum, Scarborough had approximately two weeks to prepare and file a proper response to the district court's docket text order, and was by no means forced to submit the highlighted copy of the Pooling and Servicing Agreement.

Second, Scarborough asserts that the district court "disallow[ed]" him from filing a supporting memorandum "except in response to one from the defendants," and "[d]efendants filed no such memorandum, except one complaining that the graphic form of citation adopted by [him] was somehow disallowed by the court's order." Id. As we read the district court's February 15, 2011 docket text order, however, Scarborough was clearly, albeit implicitly, afforded the opportunity to file a supporting brief along with the

13

documents he provided to the district court, i.e., a brief explaining the relevance of the key provisions of the documents. Further, in that same order, the district court expressly afforded Scarborough the opportunity to respond to any briefing filed by defendants. Because defendants filed a brief challenging the propriety of Scarborough's submission (i.e., the highlighted documents), Scarborough could and should have filed a brief explaining, in detail, how the submitted documents supported his claims.

Finally, Scarborough argues that, because the district court "avoid[ed] the pertinent documents" he submitted, the defendants' "motion remain[ed] one to dismiss," and was not properly converted into a motion for summary judgment. Id. at 12. It is apparent from the record, however, that the district court considered the Pooling and Servicing Agreement submitted by Scarborough. Thus, there was no abuse of discretion on the part of the district court in converting the defendants' motion to dismiss into a motion for summary judgment. See Geras v. Int'l Bus. Mach. Corp., 638 F.3d 1311, 1314 (10th Cir. 2011) (applying abuse of discretion standard to district court's decision to convert motion and then exclude proffered evidence).

*Tenth Circuit and Utah case law precludes Scarborough's claims*

Even if we could somehow overlook Scarborough's procedural failings, we would reject his claims on the basis of existing Tenth Circuit and Utah case law. As defendants correctly noted in their memorandum in support of their motion to dismiss, the instant case is but the latest in a series of nearly identical cases filed by Scarborough's attorney on behalf of various clients in Utah seeking "mortgage relief" on the theory that the

14

securitization of a mortgage renders the holder of the underlying trust deed and its nominees unable to foreclose absent authorization from every investor holding an interest in the securitized mortgage. This court recently affirmed the dismissal of three of those prior cases, and in doing so rejected not only their central theory, but also their accompanying "causes of action," all of which were identical to those asserted by Scarborough in his complaint. See Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Registration Sys., Inc., — F.3d —, 2012 WL — (10th Cir. 2012). Likewise, the Utah Court of Appeals has rejected as "an incorrect legal assertion" the underlying theory of these cases, i.e., "that securitization [of a mortgage] nullifie[s] [the] rights" of the holder of the underlying trust deed and its nominees. Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Registration Sys., Inc., 263 P.3d 397, 405 (Utah. Ct. App. 2011) (MERS), cert. denied, — P.3d — (Utah Dec. 14, 2011); see Howard v. PNC Mortg., — P.3d —, 2012 WL 163830 at *2 (Utah Ct. App. 2012) (affirming the holding in MERS). These cases clearly require our affirmance of the district court's dismissal of Scarborough's claims. See Kokins v. Teleflex, Inc., 621 F.3d 1290, 1295 (10th Cir. 2010) (noting that, in diversity cases, a decision by "a panel of this Court . . . interpreting state law . . . is binding on . . . subsequent panels of this Court, unless an intervening decision of the state's highest court has resolved the issue"); see also United Fire & Cas. Co. v. Boulder Plaza Residential, LLC, 633 F.3d 951, 957 (10th Cir. 2011) (holding that "where jurisdiction rests solely on diversity of citizenship and there is no controlling decision by the highest court of a state, a decision by an intermediate court should be

15

followed by the Federal court, absent convincing evidence that the highest court would decide otherwise") (internal quotation marks omitted).

## III

The judgment of the district court is AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Chief Judge