NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 14-4785

_____

CARL J. BARTON,

Appellant

v.

HEWLETT-PACKARD COMPANY


_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D. C. Civ. No. 2-13-cv-00554
District Judge:  Honorable Cathy Bissoon

_____

Submitted under Third Circuit LAR 34.1(a)
on October 8, 2015

Before: FUENTES, SMITH and BARRY, <u>Circuit Judges</u>

(Filed: December 15, 2015)


_____

OPINION[*]

_____


_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

FUENTES, Circuit Judge.

Plaintiff Carl Barton appeals the District Court's entry of summary judgment in favor of defendant Hewlett-Packard ("HP"). For the following reasons, we will affirm the District Court's judgment.

I.

Barton was a software salesperson for HP. In April 2012, HP issued Barton a Sales Letter describing his eligibility for sales commissions in fiscal year 2012. The letter set Barton's sales quota (*i.e.*, revenue target) at $1.3 million and his base commission rate at 6.52%, meaning that Barton would be eligible for a commission of $84,760 if he met his sales quota. If Barton exceeded his sales quota, he was eligible for "accelerated" commission rates ranging up to 18.25% for sales exceeding $2.288 million.

The Sales Letter stated that "HP reserves the right to adjust the terms of the Sales Plan or to cancel it at any time." J.A. 169. The letter also incorporated a similar provision from HP's Global Compensation Policy: "HP reserves the right to adjust or cancel the terms of Sales plans, or Sales letters with or without notice at any time, including but not limited to adjusting accounts, goals/quota, target incentive amount (TIA) or to address changing or unforeseen business conditions or to correct administrative errors." J.A. 176. HP also reserved final authority to resolve any dispute about commission payments: "In the event of any dispute regarding the application of, or payment under the terms of this letter and applicable policies and guidelines, Hewlett-Packard shall decide each such dispute in its sole discretion." J.A. 169. Finally, the Sales Letter assigned HP "the right to review and in its sole discretion adjust incentive

2

payments associated with large transactions for which the incentive payments are disproportionate when compared with the employee's assigned quota or contribution to toward the transactions." J.A. 168.

In March 2012, General Motors Corporation proposed to enter into an unlimited enterprise licensing agreement for HP's entire suite of software products, including Vertica, the software product that Barton sold. Barton was not a member of the HP team that negotiated the license. Nevertheless, he claims that he developed the pricing model that the HP team used to negotiate the price of Vertica. General Motors ultimately entered into a licensing agreement that priced Vertica at $8.28 million. Barton claims that his pricing model resulted in an additional $6.2 million in revenue for HP that the negotiators would not otherwise have realized.

HP decided to compensate its salespersons for the General Motors license agreement, but did not award accelerated commission rates for the total revenue of the deal. Barton was paid at his base commission rate of 6.52%, resulting in a payment of $539,452. Barton claims that his role in the deal warranted payment at an accelerated rate, resulting in a commission of $1,273,019.

Barton brought this breach-of-contract action to recover $733,477.54 in unpaid sales commissions. The District Court concluded that the Sales Letter was not an enforceable contract and granted summary judgment to HP.[1]

## II.

The parties agree that Barton's claim is governed by Pennsylvania law. "Under Pennsylvania law, contract formation requires: (1) a mutual manifestation of an intention to be bound, (2) terms sufficiently definite to be enforced, and (3) consideration."[2]

Here, HP clearly manifested its intention *not* to be bound by the commission rates set forth in the Sales Letter. HP reserved the right to "adjust the terms of the Sales Plan or to cancel it any time"; to "adjust or cancel the terms of Sales plans, or Sales letters with or without notice at any time"; to "change or discontinue" its Global Sales Compensation Policy "with or without notice at any time"; and to decide any dispute regarding commission payments "in its sole discretion." J.A. 169, 176. As other courts of appeal have recognized, no contract is formed if an employer retains complete

---

[1] We have jurisdiction over Barton's appeal pursuant to 28 U.S.C. § 1291, and exercise plenary review over the District Court's decision to grant summary judgment. *Howley v. Mellon Fin. Corp.*, 625 F.3d 788, 792 (3d Cir. 2010). Summary judgment is appropriate based on the interpretation of a contract where "the contract is so clear that it can be read only one way." *Allied Erecting & Dismantling Co., Inc. v. USX Corp.*, 249 F.3d 191, 201 (3d Cir. 2001).

[2] *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009).

discretion to modify or cancel an employee's commission.[3]  This conclusion accords with hornbook Pennsylvania law.[4]

Barton argues that the implied covenant of good faith and fair dealing can overcome the express disclaimer language in the Sales Letter and convert HP's illusory promise into an enforceable obligation.  But the duty of good faith and fair dealing only applies to a party's performance of an *existing* contract, and "does not extend to issues of contract formation."[5]  The Pennsylvania cases upon which Barton relies do not suggest otherwise.  Rather, they each concern a party's good-faith obligation to perform a discrete, discretionary task under an otherwise enforceable contract.[6]  None support the

---

[3] *See Geras v. IBM*, 638 F.3d 1311, 1317 (10th Cir. 2011) (sales letter was not a contract because "[a]lthough the letter  contained a description of IBM's present policies, including its policies for adjusting payments, it reiterated that IBM retained the discretion to alter or cancel these policies, even after sales had occurred"); *Kavitz v. IBM*, 458 Fed. Appx. 18, 20 (2d Cir. 2012) (fact that employer "retained unfettered discretion under the Plan to adjust its terms or even to cancel the Plan entirely confirms that the document is not an enforceable contract").

[4] *See Lackner v. Glosser*, 892 A.2d 21, 31 (Pa. Super. Ct. 2006) ("If the promise is entirely optional with the promisor, it is illusory, lacks consideration, and is unenforceable." (citing *Geisinger Clinic v. Di Cuccio,* 414 Pa. Super. 85, 606 A.2d 509, 512 (Pa. Super. Ct. 1992))).

[5] *Novinger Group, Inc. v. Hartford Ins., Inc.*, 514 F. Supp. 2d 662, 671 (M.D. Pa. 2007); *see also* Restatement (Second) of Contracts § 205 & cmt. c (rule imposing duty of good faith and fair dealing in performance and enforcement of contracts "does not deal with good faith in the formation of a contract").

[6] *See Germantown Mfg. Co. v. Rawlinson*, 341 Pa. Super. 42, 60-61 (Pa. Super. Ct. 1985) (party had good faith obligation to determine amounts actually owed under a judgment note); *Starr v. O-I Brockway Glass*, 432 Pa. Super. 255, 259-60 (Pa. Super. Ct. 1994) (party had good faith obligation to determine whether it was able to purchase property from a third party); *Jamison v. Concepts Plus, Inc.*, 380 Pa. Super. 431, 432-40 (Pa. Super. Ct. 1988) (party had good faith obligation to obtain necessary approvals and permits).

proposition that the duty of good faith can create a binding contract where, as here, one party expressly disclaims *any* obligation to perform.

Barton also argues that the Sales Letter has "the look and feel of a contract" and contains various "indicators" of contractual intent, such as fixed quotas and commission rates, "mandatory language" concerning the terms of incentive calculations, and references to "Legal Info" and "Terms & Conditions." But we determine the parties' intent by examining the entire writing,[7] and HP's clear, unequivocal, and repeated reservation of the choice to perform defeats any inference that HP otherwise intended to be bound. Likewise, the fact that both parties signed the agreement is not controlling because "[s]ignatures are not dispositive evidence of contractual intent."[8] The plain language of the Sales Letter unambiguously grants HP the right to perform or not perform at its own election, and therefore is not an enforceable contract.

## III.

For the foregoing reasons, we affirm the District Court's December 9, 2014 Order granting summary judgment to HP.

---

[7] *Williams v. Metzler*, 132 F.3d 937, 947 (3d Cir. 1997).

[8] *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 584 (3d Cir. 2009). Barton also urges us to certify to the Pennsylvania Supreme Court the question of whether contract formation is precluded when one party retains discretion to change or cancel the terms of a deal at any time. We decline to do so, as the answer to this question involves a straightforward application of ordinary contract-law principles.